**United States Court of Appeals**

**Fifth Circuit**

**F I L E D**

**March 21, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 07-20180

In Re: ROY LEE PIPPIN

Movant

On Motion for Authorization to File Successive Petition
for Writ of Habeas Corpus in the United States
District Court for the Southern District of Texas, Houston

On Motion for Stay of Execution

Before KING, HIGGINBOTHAM, and PRADO, Circuit Judges.

PER CURIAM:[*]

On September 15, 1995, death-row inmate Roy Lee Pippin was convicted of capital murder for intentionally killing two men during the same criminal transaction and for intentionally killing one of the men during the course of a kidnapping.[1] At the time of the killings Pippin was involved in a money laundering scheme to transport the profits from cocaine sales in the United States across the border to Mexico. When

---

[*] Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

[1] The facts underlying Pippin's conviction are detailed in Pippin v. Dretke, 434 F.3d 782 (5th Cir. 2005).

1

approximately $2 million in drug proceeds went missing, Pippin's immediate supervisor "Alfredo" directed Pippin to kidnap Elmer Buitrago and his cousin, Fabio Buitrago. After Pippin and his cohorts kept the two men captive for several days, Pippin shot each of the men approximately four times. Pippin now faces execution on March 29, 2007.

In his initial federal habeas petition filed June 21, 2002, Pippin asserted twenty-six separate claims for relief. The district court denied Pippin's petition in two separate memoranda and orders issued on November 23, 2004, and January 25, 2005, respectively, and this court denied Pippin's application for a certificate of appealability in December 2005. Pippin v. Dretke, 434 F.3d 782 (5th Cir. 2005).

Pippin, acting pro se, now moves in this court for authorization to file a successive application for writ of habeas corpus with the United States District Court pursuant to 28 U.S.C. § 2244(b)(3)(A). He contends that the claims asserted in his successive application are based on newly discovered evidence that was not available to allow timely submission to the federal district court before its denial of his first petition. Pippin also moves for a stay of execution and for leave to proceed in forma pauperis. Because Pippin has failed to make a prima facie showing that his application satisfies the requirements of § 2244(b)(2)(b)(i) and (ii), we DENY his motions.

## I.  AEDPA STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") assigns circuit courts a "gatekeeping" role in the consideration of successive federal habeas corpus applications, requiring that an applicant who wishes to file a successive application first "move in the appropriate court of appeals for an order authorizing the district court to consider the application."  28 U.S.C. § 2244(b)(3)(A); Felker v. Turpin, 518 U.S. 651, 657 (1996).  In considering such a motion, this court must determine whether "the application makes a prima facie showing that the application satisfies the requirements of" § 2244(b).  28 U.S.C. § 2244(b)(3)(C).  The portion of § 2244(b) relevant in this case requires that:

> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B).[2]  A prima facie showing that these

---

[2]  The other ground that may support consideration of a successive federal habeas petition——a "claim [that] relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable"——is not asserted by Pippin.  28 U.S.C.

3

requirements are met involves "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." In re Morris, 328 F.3d 739, 740 (5th Cir. 2003).

## II. PRIMA FACIE CASE

Pippin identifies one set of recently obtained documents that he believes supports a claim of actual innocence——three letters sent to Pippin over the past year from a woman who allegedly worked for Pippin's supervisor Alfredo at the time of the murders. The letters describe nervous and suspicious behavior by Alfredo and his associate, Cocoy, the day after the murders and relate statements made by them concerning the disposal of "it." In one letter the woman opines that the murders were part of Alfredo and Cocoy's "master plan" to "set everything and everyone up to take the fall for the big heist," including Pippin.

However, Pippin has failed to make a prima facie showing that the letters cast sufficient doubt on his guilt to meet the requirements of § 2244(b)(2)(B)(ii). In fact, the first letter acknowledges Pippin's guilt, referring to "the incident that occurred when [Alfredo] ordered [Pippin] to take care of the two so called thieves" and confirming that Pippin "w[as] acting under orders." Moreover, the vague statements concerning Alfredo's role in running the operation are consistent with the State's

§ 2244(b)(2)(A).

4

theory of Alfredo's involvement and fail to implicate anyone other than Pippin in carrying out the murders.

Pippin also alleges that newly discovered evidence supports his claims that the State violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to turn over ballistics evidence and that the State engaged in fraud to cover up the Brady violation. However, the evidence on which he relies is either not new or was previously discoverable through the exercise of due diligence, and, in any event, fails to cast doubt on his guilt in the manner required by § 2244(b)(2)(B)(ii).[3] Pippin's remaining claims are similarly unsupported by previously undiscoverable evidence that

---

[3] To support the claims, Pippin relies on his own expert's ballistics report from the time of trial, statements from his expert's deposition taken during the course of his initial federal habeas proceedings, affidavits from Pippin's own attorney that were drafted in 2000, and a recent response to an open records request indicating that the City of Houston Police Department did not maintain entry logs to track access to ballistics evidence during the time of Pippin's trial. All but the last piece of evidence were available to Pippin for timely presentation in his initial federal habeas petition, and the entry logs information was readily discoverable through the exercise of due diligence. Even if it were not, the information has no bearing on his guilt.

5

calls his guilt into question.[4]

### III.  CONCLUSION

For the foregoing reasons, we DENY Pippin's motion for authorization to file a successive habeas application.  His motions for a stay of execution and for leave to proceed in forma pauperis are also DENIED.  The State's motion to strike Pippin's

---

[4]  In addition to the previously mentioned claims, Pippin alleges that he was denied effective assistance of counsel during trial, appeal, and habeas proceedings; that he was denied the right to present a duress defense during trial; that the Texas capital sentencing schemes enacted since 1974 are unconstitutional; that the Due Process Clause requires proportionality review; and that the Texas method of execution by lethal injection amounts to cruel and unusual punishment.

In his discussion of these claims, Pippin refers to other pieces of supposedly new evidence, including the affidavit of a relative who describes his observations during Pippin's trial, a letter from the owner of the night club Pippin claims he was at during the time of the murders stating that he was never contacted by Pippin's counsel (though also stating that he has no memory of the day of the murders), and his belief that certain people might have information leading to exculpatory evidence. All of this information was previously known to Pippin, and none of the information casts doubt on his guilt.

6

motion for authorization to file a successive habeas application

is DENIED.