# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 29, 2013

No. 12-10612

Lyle W. Cayce
Clerk

IN RE: CALVIN DEWAYNE WARREN,

Movant

Motion for an order authorizing
the United States District Court for the Northern
District of Texas to consider
a successive 28 U.S.C. § 2254 application

Before BARKSDALE, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Calvin DeWayne Warren, Texas prisoner # 789034, was convicted of aggravated sexual assault and sentenced to a term of probation. The trial court subsequently revoked his probation and sentenced him to 75 years in prison. Warren seeks authorization to file a successive 28 U.S.C. § 2254 application. He argues that there was insufficient evidence supporting his plea; newly discovered evidence in the form of the victim's notarized statement reveals that he did not commit the offense; counsel rendered ineffective assistance; and his plea was not knowing and voluntary. He requests an evidentiary hearing, subpoenas ad testificandum, a polygraph examination, the production of documents, the appointment of an attorney, and the appointment of an expert recantation witness to aid him in pursuing his successive habeas application.

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

To the extent that Warren presented these claims in a prior § 2254 application, these claims may not be brought in a successive application. *See* 28 U.S.C. § 2244(b)(1). To the extent that these claims were not presented in his prior § 2254 application, Warren has not shown that the claims rely on any new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or that the factual predicate for the claims could not have been discovered previously through due diligence, and that the facts underlying the claims, if proven, would "establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." § 2244(b)(2)(A), (B).

The dissent interprets *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), to allow a petitioner to circumvent the statutory restrictions of § 2244(b)(1) and (2) upon a showing of "actual innocence" – *i.e.*, that it is more likely than not, in light of new and reliable evidence, that no reasonable juror would have found the defendant guilty. *Schlup v. Delo*, 513 U.S. 298, 329 (1995). In *McQuiggin*, the Court held that a prisoner filing a first-time federal habeas petition could overcome the one-year statute of limitations in § 2244(d)(1) upon a showing of "actual innocence" under the *Schlup* standard. 133 S. Ct. at 1928. Critically, the holding in *McQuiggin* was based on the Court's conclusion that Congress, through its silence on the issue, had not intended to eliminate the pre-existing equitable "actual innocence" exception for an untimely first-time filer. *See id.* at 1934. On the other hand, the Court expressly recognized that Congress, through § 2244(b), had intended to "modify" and "constrain[]" the "actual innocence" exception with respect to second or successive petitions. *See id.* at 1933-34. Nothing in *McQuiggin* authorizes us to ignore or bypass these constraints.

Warren's claims are essentially identical to the claims he identified in his prior motion for authorization to file a successive § 2254 application. Accordingly, he is warned that the filing of repetitious or frivolous motions for authorization to file successive habeas corpus applications will invite the

imposition of sanctions, including dismissal, monetary sanctions, and/or restrictions on his ability to file pleadings in this court and any court subject to this court's jurisdiction.

IT IS ORDERED that Warren's motion for authorization to file a successive habeas corpus application is DENIED, and a SANCTION WARNING IS ISSUED.

DENNIS, Circuit Judge, dissenting in part and concurring in part:

Although I agree with the majority opinion that Warren is procedurally barred from raising most of his claims, I respectfully dissent from its judgment denying Warren authorization to pursue his actual innocence claim in the district court. The Supreme Court's recent decision in *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), makes clear that the *Schlup* actual innocence exception has survived the passage of Antiterrorism and Effective Death Penalty Act (AEDPA), by holding that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* [*v. Delo*, 513 U.S. 298 (1995)] and *House* [*v. Bell*, 547 U.S. 518 (2006)], or [an] expiration of the [AEDPA] statute of limitations." *Id.* at 1928.

In *Schlup*, the Supreme Court held that a prisoner otherwise subject to procedural bars on the filing of abusive or successive writs of habeas corpus may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence. 513 U.S. at 326-27.[1] "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. Because

---

[1] *Schlup* provides that the actual innocence exception applies to the situation at issue in the present case: where a petitioner, barred from filing his second or successive federal writ of habeas corpus, may have his constitutional claim considered on the merits by first making a credible showing of actual innocence. 513 U.S. at 326-27. Contrary to the majority opinion, therefore, the *Schlup* actual innocence exception has always been available to petitioners seeking to have a second or successive petition considered on the merits. *McQuiggin* extends *Schlup* to apply to a type of procedural bar not at issue in *Schlup*—namely, where a petitioner seeks to bring an out-of-time petition. 133 S. Ct. at 1928. Nothing in *McQuiggin* suggests that *Schlup* is no longer good law; indeed, the Supreme Court relied upon *Schlup* in both *McQuiggin* and *House* to apply the actual innocence exception to new procedurally barred claims. *See id.*; *House*, 547 U.S. at 536-37.

this standard is intended to focus the inquiry on actual innocence, "the district court is not bound by the rules of admissibility that would govern at trial." *Id.* "Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." *Id.* at 327-28. Indeed, "[t]he habeas court must make its determination concerning the petitioner's innocence 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.* at 328 (quoting Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 1 U. Chi. L. Rev. 142, 160 (1970)). "It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329. "Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.*

Further, in *Bousley v. United States*, 523 U.S. 614, 623 (1998), the Supreme Court held that the defaulted claim of a petitioner who pleaded guilty may still be reviewed in a collateral proceeding if he can establish that the constitutional error in his plea colloquy has probably resulted in the conviction of one who is actually innocent in accord with *Schlup*, 513 U.S. at 327-328, and *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Applying the principles and standards of *Schlup* and *Bousley* to the present case, I conclude that Warren has made a prima facie showing that he was actually innocent of the charge to which he pleaded nolo contendre, such that we should authorize the district court to consider his application by first

No. 12-10612

assessing whether Warren has in fact satisfied the *Schlup* requirements and, if he has, to consider Warren's application for habeas relief on its merits.

I.

Warren, a Texas prisoner, is seeking habeas relief from his conviction and 75 year sentence for sexual abuse of a child, arguing that his nolo contendre plea was neither voluntarily nor intelligently entered due to the ineffective assistance of his counsel.   He presents powerful new reliable evidence of his actual innocence in the form of a signed and notarized affidavit from the victim, his niece Patricia Neloms ("Neloms"), attesting that Warren, her uncle, had never sexually assaulted or abused her in any way. Neloms subscribed to the affidavit in 2005, after she had become an adult. In 1996, when she was a minor under the age of 14 years,  Neloms, in response to her teacher's inquiry, confided that she had been sexually assaulted by her uncle, Warren.  The teacher relayed that information to the police, who  arrested and charged Warren with aggravated sexual assault. In Texas, a person commits aggravated sexual assault if the victim is a child under the age of 14. Tex. Penal Code Ann. §§ 22.021(a)(1) and (a)(2)(B) (West 2011). Warren, upon the advice of counsel, pleaded nolo contendre to the charge and was sentenced to probation in Dallas County, Texas. However, Warren's probation  was later revoked because he failed to notify his probation officer of his change of address. Warren was then sentenced to 75 years imprisonment. Neloms, now an adult, explained in her affidavit that her stepfather, Willie Lee Offord ("Offord"), had sexually abused her continually for five years, beginning when she was ten years old and ending when she was fifteen. In her affidavit, Neloms explained that Offord ordered her not to tell anyone that he had abused her, but to say that Warren was her abuser. Offord threatened that he would kill Neloms and her family if she did not follow his instructions. She explained that Offord continued to abuse her and that she felt that her life was in danger. Neloms' affidavit is unequivocal:

No. 12-10612

I am writing yall to let yall know that my uncle Calvin DeWayne Warren he did not mess with me this guy name Willie Lee Offord messed with me when I was ten years old until I got 15 years old. He had threatened me to say my uncle Calvin DeWayne Warren did it. He said I was going to be killed and my family was going to be killed if I told them that he did it. My life was in danger at that time I was thinking about what he told me about my family. . . . I feel bad about my uncle in the pin for nothing for somebody else responsibility. My mother did not know about it because I didn't tell her because Willie Lee Offord told me not to tell her. She kept asking me was he messing with me I said no. I want my uncle out of the pen. I love my uncle I want Willie Lee Offord to have death role in there. I was just a little girl he took my virginity.

The 2005 affidavit contains new evidence for the purposes of *Schlup* because it was not available to Warren until after he pleaded nolo contendere and after his first § 2254 application was denied. "To be credible, [an actual innocence] claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—*that was not presented at trial*." *Schlup*, 513 U.S. at 324 (emphasis added). "To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence *that was not presented at trial*." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (emphasis added). The issue, then, for establishing newness is whether the evidence was available and presented at the time of trial.[2]

---

[2] There is a circuit split as to whether, under *Schlup*, the evidence was not discoverable at the time of trial or whether it is sufficient that the evidence be newly presented. *See Wright v. Quarterman*, 470 F.3d 581, 591 (5th Cir. 2006) (discussing the circuit split). We need not

No. 12-10612

Moreover, Warren's delay of several years in presenting the affidavit as evidence of his actual innocence does not defeat his claim. The Supreme Court has "reject[ed] the . . . argument that habeas petitioners who assert convincing actual-innocence claims must prove diligence to cross a federal court's threshold." *McQuiggin*, 133 S. Ct. at 1935. Undue delay is a factor that the district court may weigh in assessing whether the petitioner's actual innocence claim has been convincingly shown. *See id.* at 1935-36.[3]

The affidavit, which Neloms authored, signed, and had notarized after reaching adulthood, unequivocally asserts Warren's innocence and persuasively tends to explain why she falsely accused Warren in 1996. Moreover, because Warren did not go to trial, but pleaded nolo contendere, it is unlikely that Neloms ever testified or was subjected to cross-examination in this case.[4] Further, it is also possible she has given no written statement, sworn or otherwise, as to Warren's guilt in this case. Her 2005 affidavit may well be her first and only sworn statement regarding Warren, and in it she expressly attests to his innocence. The credibility of her affidavit also is supported by evidence

---

resolve this issue here. The new evidence of Warren's actual innocence—namely, the affidavit—was not available at the time of his plea and therefore satisfies the more stringent definition of "new evidence."

[3] Warren has asserted additional evidence of his actual innocence, namely that on April 16, 1996, the day that police alleged that he sexually assaulted Neloms, he was incarcerated on an unrelated charge. Warren asserts that his counsel was ineffective, *inter alia*, because he failed to investigate or seek confirmation of his incarceration alibi. Warren does not rely on this alibi as the new, reliable evidence essential to his actual innocence claim, but if he proves that he could not have committed the crime because he was incarcerated, this fact may be taken into consideration by the district court in deciding the merits of his habeas petition.

[4] It is not known at this time whether Neloms ever gave any statement to the police. The only police report in the record before us is a narrative of Neloms' teacher's statement to the police. The police officer who wrote the narrative noted that at the time, Neloms had not been interviewed. The state has not entered an appearance or submitted any evidence or a brief in this case.

No. 12-10612

that Offord, her stepfather, eventually was charged with and pleaded guilty to aggravated sexual assault of a child for his abuse of Neloms.[5]

Accordingly, I conclude that Warren is entitled to pursue his actual innocence claim and habeas petition because he has made a prima facie showing that no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt of the 1996 sexual assault upon Neloms in light of the new reliable evidence of Neloms' affidavit attesting that Warren is innocent and that her stepfather, Offord, rather than Warren, is the person who sexually abused her.

## II.

The majority mis-perceives its role as an appeals court in purporting to decide the merits of Warren's actual innocence claim. Warren has moved for an order authorizing the district court to consider his successive habeas petition and actual innocence claim, pursuant to 28 U.S.C. § 2244(b)(3)(A) . Thus, it is our job to determine whether Warren has made a prima facie showing that he satisfies the *Schlup* requirements for proving actual innocence, and, if so, to authorize the district court to consider both his actual innocence claim and—if it finds that Warren has in fact satisfied the *Schlup* requirements—the merits of his habeas application asserting a constitutional violation. Applying the teachings of the Supreme Court's actual innocence cases and our own cases dealing with second or successive habeas corpus applications by analogy, I would conclude that Warren has presented a prima facie actual innocence claim and direct the district court to consider and determine the merits of that claim.

---

[5] On March 8, 2001, Willie Lee Offord pleaded guilty in Dallas County, Texas to aggravated sexual assault of a child under the age of 14 and was sentenced to a 12-year term of imprisonment. The offense occurred on August 1, 1998. Offord was released from prison on May 18, 2012. *Texas v. Offord*, Judgement on Plea of Guilty or Nolo Contendere Before Court, No. F-0020003-TJ (Dallas County Crim. Dist. Ct. 3, March 3, 2001).

In my view, because we are an appellate court, it is not our function or role to take evidence or to decide the merits of an actual innocence claim in the first instance, as the majority purports to do here. The Supreme Court has said that "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. "In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make. Rather, [in the district court], the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy . . . . In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Id.* at 624. Furthermore, in *Schlup*, the Court stated that "the District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Schlup*, 513 U.S. at 331-32.

Moreover, this approach is analogous to and in accord with the approach our court takes when a petitioner seeks to file a successive petition pursuant to the stringent requirements of 28 U.S.C. § 2244(b). Petitioners must first make a prima facie showing that they have met these requirements. 28 U.S.C. § 2244(b)(3)(C); *In re Wilson*, 442 F.3d 872, 873 (5th Cir. 2006). "This requires 'a sufficient showing of possible merit to warrant a fuller exploration by the district court.'" *In re Swearingen*, 556 F.3d 344, 347 (5th Cir. 2009) (quoting *In re Morris*, 328 F.3d 739, 740 (5th Cir. 2003)). Once authorization has been granted and the petitioner has filed his petition in the district court, the district court must independently determine whether the petition actually satisfies the standard required of an actual innocence claim. In doing so the district court can develop the record—by holding an evidentiary hearing, appointing counsel, or requesting briefing from both parties, as it deems necessary—in order to assess whether Warren's claim of actual innocence is sufficiently credible to act as a

No. 12-10612

gateway through which he may pass to have his otherwise procedurally barred claims of constitutional error heard on the merits.

For these reasons, I respectfully dissent from the majority's refusal to authorize Warren to pursue his actual innocence claim together with his habeas claim in the district court, although I concur in all other respects.